Nos. 22-01744, 22-01745

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA
SECURITY BREACH LITIGATION

## REPLY OF DEFENDANT-APPELLANT MARRIOTT
## INTERNATIONAL, INC.

*On Appeal*
*from the United States District Court for the District of Maryland,*
*MDL No. 19-md-2879 (Grimm, J.)*

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
Tel: 216-621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
Tel: 202-861-1530

Lindsay C. Harrison
Matthew S. Hellman
Michelle S. Kallen
Elizabeth B. Deutsch
Mary E. Marshall
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: 202-639-6000
mhellman@jenner.com

*Counsel for Defendant-Appellant Marriott International, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................1

I.    Plaintiffs' Class-Action Waiver Must Be Enforced On Appeal............4

      A.    Marriott Never Repudiated The Waiver. ......................................4

      B.    The Class Waiver Is Enforceable. ...................................11

      C.    The Class-Action Waiver Covers Plaintiffs' Class Claims....................................................................19

II.   Plaintiffs'    Classes    Fail    Rule    23's    Ascertainability Requirement....................................................................21

      A.    *EQT* And Administrative Feasibility Are The Law In This Circuit...................................................................21

      B.    Plaintiffs Cannot Show An Administratively Feasible Method To Identify Class Members..............................................22

      C.    Class Members Must Be Identified At Trial...............................25

III.  Plaintiffs' Damages Model Does Not Satisfy *Comcast*........................27

      A.    *Comcast* Requires This Court To Examine The Validity Of Plaintiffs' Damages Model. ......................................27

      B.    Plaintiffs' Damages Model Relies On An Untested Theory Of Co-Movement.................................................28

CONCLUSION .................................................................33

# TABLE OF AUTHORITIES

CASES

*200 E. 87th St. Associates v. MTS, Inc.*, 793 F.Supp. 1237
(S.D.N.Y. 1992)........................................................................4

*American Express Co. v. Italian Colors Restaurant*, 570 U.S.
228 (2013)..............................................................................12

*American Recovery Corp. v. Computerized Thermal Imaging,
Inc.*, 96 F.3d 88 (4th Cir. 1996).........................................20

*In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018) ...............26, 27

*Atlantic Marine Construction Co. v. United States District
Court for the Western District of Texas*, 571 U.S. 49 (2013) ..............12, 14

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) ...........................................22

*In re Checking Account Overdraft Litigation MDL No. 2036*, 672
F.3d 1224 (11th Cir. 2012)....................................................5

*City Select Auto Sales Inc. v. BMW Bank of North America Inc.*,
867 F.3d 434 (3d Cir. 2017)..................................................25

*Collins & Aikman Products Co. v. Building Systems, Inc.*, 58
F.3d 16 (2d Cir. 1995)...........................................................21

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ......................................28, 31, 32

*Dabriel, Inc. v. First Paradise Theaters Corp.*, 99 A.D.3d 517 (1st
Dep't 2012) ...........................................................................16

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*,
923 F.2d 245 (2d Cir.1991)...................................................15

*In re Delta/AirTran Baggage Fee Antitrust Litigation*, 317
F.R.D. 675 (N.D. Ga. 2016) .................................................24

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)............................27

*EQT Productions Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014).......21, 22, 23, 26

*Faggiano v. CVS Pharmacy, Inc.*, 283 F.Supp.3d 33 (E.D.N.Y. 2017) ............................................................................................7

*Filho v. Safra National Bank of New York*, 2014 WL 12776165 (S.D.N.Y. Mar. 11, 2014) ............................................................ 15-16

*Flores-Mendez v. Zoosk, Inc.*, 2022 WL 2967237 (N.D. Cal. July 27, 2022) ....................................................................................9

*Gilbert Frank Corp. v. Federal Insurance Co.*, 520 N.E.2d 512 (N.Y. 1988) ..................................................................................4

*Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824 (N.Y. 1988) ..........................................................................................15

*GMS Industrial Supply, Inc. v. G & S Supply, LLC*, 441 F.Supp.3d 221 (E.D. Va. 2020) ............................................................7

*In re H & R Block Refund Anticipation Loan Litigation*, 59 F.Supp.3d 903 (N.D. Ill. 2014) .................................................5

*Korea Week, Inc. v. Got Capital, LLC*, 2016 WL 3049490 (E.D. Pa. May 27, 2016) ......................................................................11

*In re Korean Air Lines Co. Ltd.*, 642 F.3d 685 (9th Cir. 2011) ........................6

*Licitra v. Gateway, Inc.*, 189 Misc. 2d 721 (N.Y. Civ. Ct. 2001) ....................19

*Lindsay v. Carnival Corp.*, 2021 WL 2682566 (W.D. Wash. June 30, 2021) ..................................................................................18

*Lombardi v. DirecTV, Inc.*, 549 F. App'x 617 (9th Cir. 2013) ........................5

*MacIntyre v. Moore*, 335 F.Supp.3d 402 (W.D.N.Y. 2018) ............................15

*Marvel Entertainment Group, Inc. v. Young Astronaut Council*, 1989 WL 129504 (S.D.N.Y. Oct. 27, 1989) ....................................15

*Mazurkiewicz v. Clayton Homes, Inc.*, 971 F.Supp.2d 682 (S.D. Tex. 2013) ................................................................................18

*McCormick v. Resurrection Homes*, 956 N.Y.S.2d 844 (N.Y. Civ. Ct. 2012)..................................................................................17

*In re National Prescription Opiate Litigation*, 956 F.3d 838 (6th Cir. 2020) ............................................................................ 5-6

*Nayal v. HIP Network Services IPA, Inc.*, 620 F.Supp.2d 566 (S.D.N.Y. 2009)..............................................................................14

*Palmer v. Convergys Corp.*, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) .......................................................................................18

*In re Rail Freight Fuel Surcharge Antitrust Litigation*, 934 F.3d 619 (D.C. Cir. 2019) ...............................................................27

*Roman v. Spirit Airlines, Inc.*, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) ................................................................... 20-21

*Rosenfeld v. Port Authority of New York & New Jersey*, 108 F.Supp.2d 156 (E.D.N.Y. 2000)..............................................15

*Scarcella v. America Online, Inc.*, 11 Misc. 3d 19 (N.Y. Sup. Ct. 2005) ........................................................................................19

*In re SFBC International, Inc., Securities & Derivative Litigation*, 435 F.Supp.2d 1355 (J.P.M.L. 2006) ...........................6

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) ..................................................13

*In re Sonic Corp.*, 2021 WL 6694843 (6th Cir. Aug. 24, 2021).......................24

*Spinelli v. NFL*, 2016 WL 3926446 (S.D.N.Y. July 15, 2016), *abrogated on other grounds by* 2016 WL 7441696 (S.D.N.Y. Dec. 23, 2016) ..............................................................................16

*In re Titanium Dioxide Antitrust Litigation*, 962 F.Supp.2d 840 (D. Md. 2013)............................................................................10

*Tsadilas v. Providian National Bank*, 13 A.D.3d 190 (N.Y. 2004) ........................................................................................14, 16

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)......................................26

*U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247 (S.D.N.Y. June 25, 2015)........................................................................................18, 19

*United States v. Seigler*, 990 F.3d 331 (4th Cir. 2021) ............................... 21-22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)......................................27

## OTHER AUTHORITIES

Sungjin Cho *et al.*, *Optimal Dynamic Hotel Pricing* (2018) ..........................30

2 *Newberg and Rubenstein on Class Actions* § 6:43 (6th ed. 2022) ...............................................................................................................6

# INTRODUCTION

The district court ignored the parties' class-action waiver, violated Rule 23's ascertainability requirement, and excused plaintiffs' failure to produce an adequate damages model. Each error is fatal to the certification order, and each stems from the same fundamental problem.

Plaintiffs initially pled class claims predicated on harm from identity theft. When discovery revealed few to no individuals who suffered such harm, counsel grasped for a new approach to define as large a class as possible. They settled upon a convoluted overpayment theory, which even the district court recognized was flawed, *sua sponte* redefining the plaintiffs' classes. But even as revised, those classes cannot be squared with Rule 23, the precedents of the Supreme Court and this Court, or the parties' contract.

Plaintiffs claim that Marriott "repudiated" the parties' class-action waiver. But Marriott pressed its class-waiver defense repeatedly in its Answer and throughout discovery even though plaintiffs refused to say whether they were defining their classes to comprise signatories to the SPG Program Terms—the contract containing the class waiver—or one of the more than two-dozen other contracts they invoked. When plaintiffs finally revealed, for the first time at class certification, that they sought to define

classes by SPG Membership, Marriott promptly responded that the class waiver barred certification. Plaintiffs now contend that Marriott knew at the start of the case that "at least some Plaintiffs may have been subject to SPG terms." Appellee Br. 20 n.8. Exactly. Marriott could not enforce the class waiver in multidistrict litigation as to *all* plaintiffs until it became clear that *all* plaintiffs (and *all* class members) were subject to the SPG Program Terms—a fact plaintiffs obfuscated until seeking certification. Marriott preserved and then invoked the waiver as soon as possible. That is not "repudiation."

Plaintiffs also suggest that Marriott repudiated the class waiver merely by agreeing to multidistrict litigation. But an agreement to multidistrict litigation is not an agreement to abandon a class waiver. Class-action waivers are regularly enforced in multidistrict litigation, and no defendant would agree to multidistrict litigation if doing so nullified otherwise available contract defenses.

Faced with a class-action waiver Marriott has asserted at every turn, plaintiffs argue the waiver is unenforceable. But this waiver is indistinguishable from waivers regularly upheld by federal and state courts, and plaintiffs (again) cite no authority to the contrary.

2

Plaintiffs also have no answer to the ascertainability problems with the certified classes. As the district court recognized, guests who were reimbursed for their stays suffered no "overpayment" injury and therefore lack standing. Plaintiffs insist that determining whether each guest was ever reimbursed for her stays would be straightforward, but offer no remotely feasible process for doing so. Ascertaining which putative class members were never reimbursed requires extensive fact-finding about millions of potential class members across the country—administratively infeasible fact-finding that would have to take place *at trial*, no less. That is precisely what this Court's ascertainability doctrine is designed to prevent. It is telling that plaintiffs urge this Court to abandon its ascertainability precedent; properly applied, that precedent requires reversal.

Finally, plaintiffs cannot defend the adequacy of their damages model. Plaintiffs do not dispute their model depends on the assumption that all competitor hotel prices move in sync regardless of the kind of room, type of rate, time of year, or any of the other innumerable variables that go into hotel pricing. Plaintiffs' expert never tested that baseless assumption, and Marriott's expert disproved it. Rule 23 requires more. Without a model that

can reliably calculate damages classwide, plaintiffs have not carried their burden to defend class certification.

## I. Plaintiffs' Class-Action Waiver Must Be Enforced On Appeal.

Plaintiffs expressly agreed to handle disputes "individually without any class action." JA727 § 13.21. They cannot avoid their black-and-white commitment.

### A. Marriott Never Repudiated The Waiver.

Plaintiffs first contend that Marriott "repudiated" (or "waived") the parties' class-action waiver in this litigation. Appellee Br. 17–21. But in setting out their grand theory, plaintiffs omit the legal standard. For good reason—it is stringent, and plaintiffs do not come close to meeting it.

Repudiation or waiver requires "a clear manifestation of intent by defendant to relinquish" the contractual right. *Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988). That intent "must be clearly established and cannot be inferred from doubtful or equivocal acts or language," and "the burden of proof is on the person claiming" repudiation or waiver. *200 E. 87th St. Assocs. v. MTS, Inc.*, 793 F.Supp. 1237, 1251 (S.D.N.Y. 1992) (quoting authority).

4

Plaintiffs try two "repudiation" theories, but neither comes close to meeting this test.

1.     Plaintiffs first suggest Marriott repudiated its class waiver by agreeing to multidistrict litigation (MDL)—a proposition as novel as it is wrong.

MDLs are designed for coordinated, efficient resolution of common pretrial issues; they prevent conflicting judgments in related cases filed in disparate venues. But there is nothing incompatible about MDL and class-action waivers, as attested by the legion of cases nationwide enforcing class waivers in MDLs. *See, e.g., Lombardi v. DirecTV, Inc.*, 549 F. App'x 617, 619–20 (9th Cir. 2013); *In re Checking Acct. Overdraft Litig. MDL No. 2036*, 672 F.3d 1224, 1226, 1230 (11th Cir. 2012); *In re H & R Block Refund Anticipation Loan Litig.*, 59 F.Supp.3d 903, 906, 910 (N.D. Ill. 2014). Plaintiffs cite no cases holding otherwise.[1]

These cases reflect the reality that a "party's rights" cannot "be impinged to create efficiencies in the MDL." *In re Nat'l Prescription Opiate*

---

[1] Plaintiffs cite a case involving neither class-action waivers nor multidistrict litigation. *See* Appellee Br. 17–18 (citing *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F.Supp.3d 348, 359 (S.D.N.Y. 2017) (plaintiff repudiated contractual right by engaging in activity the contract defined as repudiation)).

*Litig.*, 956 F.3d 838, 845 (6th Cir. 2020); *see In re Korean Air Lines Co. Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011) ("individual cases that are consolidated or coordinated for pretrial purposes" in MDLs "remain fundamentally separate actions"). A class waiver, or any other contract defense, is not repudiated by the mere fact of multidistrict litigation. *See* 2 *Newberg and Rubenstein on Class Actions* § 6:43 (6th ed. 2022).

Nor did Marriott repudiate the SPG Program Terms' class waiver by dint of the MDL's location in Maryland or its inclusion of plaintiffs' omnibus state-law claims. Again, plaintiffs misunderstand what an MDL is and does. Venue questions are not resolved by the MDL, but rather "by the transferor judge when the action is remanded to the transferor court after completion of … [MDL] pretrial proceedings." *In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F.Supp.2d 1355, 1356 (J.P.M.L. 2006).[2] As for choice of law, Marriott could not effectively enforce that provision of the SPG Program Terms in pretrial proceedings involving plaintiffs' kitchen-sink state-law claims until it became clear that all plaintiffs and classes included only SPG Members. *See infra*, 8–10.

---

[2] Plaintiffs' cited case is not contrary; indeed, it did not involve MDL. Appellee Br. 19 (citing *Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F.Supp.2d 369 (S.D.N.Y. 2010)).

6

Regardless, even had Marriott disavowed other provisions of the SPG Program Terms (and it has not), the scope of any waiver would not touch the class-action provision, especially given the contract's waiver and severability clauses, which provide: "[F]ailure to insist upon strict compliance … will not be deemed a waiver of any rights," and "[i]f any part of the[] SPG Program Terms is held to be unlawful or unenforceable, that part will be deemed deleted … and the remaining provisions will remain in force." JA727 §§ 13.19, 13.22. These clauses express clear intent that the class waiver should stand. *See Faggiano v. CVS Pharmacy, Inc.*, 283 F.Supp.3d 33, 35, 37–38 & n.4 (E.D.N.Y. 2017). The fact that the class-waiver, venue, and choice-of-law clauses appear "in the same paragraph does not alter that conclusion"—"the clauses are divisible because they each impose unique requirements." *GMS Indus. Supply, Inc. v. G & S Supply, LLC*, 441 F.Supp.3d 221, 228 (E.D. Va. 2020).[3]

It bears repeating: No court has ever held that participation in MDL pretrial proceedings forfeits a class-action waiver. For good reason.

---

[3] For the same reason, even if litigating in an MDL meant the parties would not litigate everything "individually," Marriott could still enforce the waiver as to class litigation. *See* JA727 § 13.21 (agreeing to litigate "individually *without any class action*").

7

Plaintiffs' unsupported rule would create enormous disincentives to participate in MDLs. No litigant would accede to multidistrict litigation if it meant losing potential contract defenses before those defenses even became relevant. Plaintiffs' position is wrong on the law, wrong on the facts, and wrong on the policy.

2. Plaintiffs' fallback is that Marriott's other litigation conduct forfeited its class-action waiver. *See* Appellee Br. 19–21. But Marriott repeatedly raised this defense, even before class certification.

The timeline tells the tale. In their operative complaint, plaintiffs defined a putative nationwide class of "[a]ll natural persons residing in the United States whose Personal Information was compromised in the Data Breach" and cited a litany of contracts. Dkt. 413 ¶¶ 276, 312–28. Plaintiffs admit they alleged only two plaintiffs were SPG members. Appellee Br. 20 n.8. When Marriott moved to dismiss, it noted that "Plaintiffs' generic pleading style makes it difficult to sort out what terms and conditions apply to their dealings with Starwood or Marriott," including applicable "class-action waivers." Dkt. 451, at 24 n.15.

When the district court denied that motion, Marriott submitted its Answer, including a defense that "Plaintiffs' claims are barred … by their

agreement to waive participation in a class action." Dkt. 604, at 97.[4] Then, throughout discovery, Marriott pressed plaintiffs to identify what contracts they were invoking to determine how the class-action waiver applied. *See* Dkt. 1006, at 55:25–56:25 (discussing Marriott Interrogatory 15). Plaintiffs, in turn, repeatedly refused to identify those contracts, eventually pointing Marriott to "no fewer than 31 documents." *Id.* at 56:3–18. At a hearing discussing class certification, the district court acknowledged that it, too, had "no idea" what plaintiffs' proposed classes looked like; that meant, as the court put it, the "[d]efense has no idea what the class [certification] defense is going to be until they know what classes plaintiffs want to certify. What are we talking about?" Dkt. 723, at 41:17–20.

Marriott, meanwhile, told plaintiffs it would argue that "by enrolling in Starwood's Preferred Guest Program … , individual bellwether plaintiffs agreed to forego participation in a class action." Marriott's Response to

---

[4] A defendant in a data-incident case preserves its class-action waiver defense by raising it "in its answer" and at class certification, even if litigation has been ongoing for years. *Flores-Mendez v. Zoosk, Inc.*, 2022 WL 2967237, at *1 (N.D. Cal. July 27, 2022). Plaintiffs' citation confirms as much. *See* Appellee Br. 19 (citing *Am. Int'l Grp. Eur. S.A.*, 756 F.Supp.2d at 380 (by including the defense in its answer, defendant "reasonably put[s] [plaintiffs] on notice that [the defendant] intend[s] to preserve the [contractual] clause as a defense")).

9

Interrogatory 14. Marriott repeated this defense in depositions, while trying to assess whether named plaintiffs were SPG Members and how the SPG Program Terms would feature in plaintiffs' proposed classes. *See* Dkt. 1019-30, at 263:11–266:5 (Maldini Dep.); Dkt. 1019-31, at 247:15–249:9 (Cullen Dep.). That is the opposite of "a clear manifestation of intent by defendant to relinquish" the defense.

Only when plaintiffs moved for class certification did they finally identify the contracts they were relying on, for the first time limiting proposed contract classes to SPG Members. Dkt. 1022-1, at 6–7. Plaintiffs plainly understood Marriott would invoke the waiver as a defense then because plaintiffs affirmatively argued that "those issues will also be common to the class" so should not defeat certification. *Id.* at 28. As promised, Marriott raised its class-waiver defense in opposing class certification, JA666–667—the "proper stage" to enforce such a waiver, *In re Titanium Dioxide Antitrust Litigation*, 962 F.Supp.2d 840, 853 (D. Md. 2013). Only afterward did plaintiffs argue for the first time that Marriott disavowed the class-action waiver. *See* Dkt. 904, at 5–9. It is *plaintiffs* who forfeited their present class-action waiver-related arguments, not Marriott.

10

Against that backdrop, plaintiffs' recitation of the hours and money spent on pretrial proceedings rings hollow. Plaintiffs knew the SPG Program Terms contained a class-action waiver, and they knew Marriott had identified that waiver as an affirmative defense to the extent plaintiffs chose to define their classes in reference to that contract. Plaintiffs' own litigation choices ensured the class waiver could not be considered until class certification; this Court should not entertain their complaints about those choices now. The real waste of resources would be to fail to enforce the class waiver today, at certification, and allow years of merits discovery for class claims that cannot be certified.

**B.    The Class Waiver Is Enforceable.**

Plaintiffs then argue that the waiver is unenforceable, but their argument cannot be squared with precedent.

1.    *The waiver is enforceable under federal law.*

a.    Plaintiffs first assert that "[a] party cannot contract around the federal rules." Appellee Br. 22. For starters, a class waiver does not so much "contract around" Rule 23, as defeat class certification by rendering its requirements impossible for the parties to meet. *See Korea Wk., Inc. v. Got Cap., LLC*, 2016 WL 3049490, at *7–11 (E.D. Pa. May 27, 2016) (enforcing

11

independent class-action waiver under federal (and New York) law). Plaintiffs' own cases support this point. In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), the Supreme Court held that a forum-selection clause should ordinarily be given controlling weight, notwithstanding Rule 12(b)(3) (*and* the federal venue statute). Courts' "calculus changes … when the parties' contract contains a valid forum-selection clause," a legitimate agreement made "in advance to litigate disputes in a particular forum." *Id.* at 63, 66. So, too, with class-action waivers and Rule 23.

Plaintiffs propose that class-action waivers violate Rule 23 because the Rule "is not merely a procedural tool for the benefit of the named parties," but a broader directive to courts about vindicating public interests. Appellee Br. 26. The relevant question, however, is whether parties can validly contract to forgo Rule 23's class-action mechanism. The answer is clear: Rule 23 does not "establish an entitlement to class proceedings." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). The Supreme Court has "rejected th[e] proposition" that "federal law secures a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23." *Id.* at 234–35. Rule 23 sets federal requirements for

12

class proceedings; it does not handcuff parties from voluntarily agreeing to resolve disputes by other means. Indeed, courts regularly enforce class-action waivers. *See* Marriott Appellant Br. 29–30.

b.     Plaintiffs turn next to *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), a 4-1-4 split decision holding that a New York statute prohibiting class actions for statutory damages should not be applied by a federal court sitting in diversity in light of Rule 23. Plaintiffs ask this Court to infer that "[i]f the federal rules control over a statute enacted by a sovereign state …, they also control over Marriott's contract." Appellee Br. 24. *Shady Grove* does not support this sweeping conclusion. There, the Court weighed whether New York and federal rules "address different issues" or conflict; a plurality stated the Rules Enabling Act should govern choice of law. 559 U.S. at 398–99. The Court did not consider—much less question—the legality of private contracts containing class-action waivers.

c.     Finally, plaintiffs resort to policy prescriptions. Reasoning by analogy to venue and quoting platitudes about the purposes of Rule 23, plaintiffs say the district court was free to ignore the parties' class-action waiver in favor of the general "public interest." Appellee Br. 26–27. That is

13

not a legal ground to ignore the parties' contract. "[T]he interest of justice is served by holding parties to their bargain." *Atl. Marine Constr. Co.*, 571 U.S. at 66 (quotation marks omitted).

    2.   *The waiver is enforceable under state law.*

    a.   If federal law will not release them from their contract, plaintiffs suggest New York law might, by deeming the class waiver unconscionable. "Courts applying New York law, however, have uniformly held that class action waivers are not unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F.Supp.2d 566, 573 (S.D.N.Y. 2009) (collecting cases). Plaintiffs' own citations affirm this well-established rule. *See* Appellee Br. 29 (citing *Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 191 (N.Y. 2004) ("Under New York law, 'a contractual proscription against class actions … is neither unconscionable nor violative of public policy.'" (citation omitted))).

    b.   To avoid that straightforward result, plaintiffs are forced to argue there is something special about *this* contract that makes it unique. But New York sets an intentionally "high standard of proof required to show unconscionability": The contract must be "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms"; and a plaintiff

14

must prove her contract is both procedurally and substantively unconscionable to back out. *Marvel Ent. Grp., Inc. v. Young Astronaut Council*, 1989 WL 129504, at *4 (S.D.N.Y. Oct. 27, 1989); *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). Plaintiffs show neither.

    i.    On procedural unconscionability, plaintiffs suggest that this class-action waiver is unenforceable because plaintiffs are people, while Marriott is a sophisticated business. But New York courts hold that a mere "disparity in bargaining power [is] insufficient to undermine the enforceability of any contract"—including form contracts. *MacIntyre v. Moore*, 335 F.Supp.3d 402, 415 (W.D.N.Y. 2018) (collecting cases); *see Rosenfeld v. Port Auth. of N.Y. & N.J.*, 108 F.Supp.2d 156, 164 (E.D.N.Y. 2000). The "purpose of the unconscionability doctrine" is not to redress inequality between the parties but to "prevent unfair surprise or oppression." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991). New York courts thus judge procedural unconscionability "by whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract." *Filho v. Safra Nat'l Bank of N.Y.*, 2014 WL 12776165, at *10

15

(S.D.N.Y. Mar. 11, 2014) (quoting authority). Plaintiffs point to nothing similar here.

Plaintiffs next complain that they had no opportunity to negotiate terms. But the first case they cite enforced a class-action waiver in a consumer credit-card agreement. *See Tsadilas*, 13 A.D.3d at 191 (rejecting plaintiffs' assertion that litigation costs would prevent individual litigation). Plaintiffs move on to employment and housing cases. *See* Appellee Br. 29–30. But New York law distinguishes those contracts for good reason: People cannot easily "walk away" from their jobs or homes and find others if they do not like the terms and conditions. *See Dabriel, Inc. v. First Paradise Theaters Corp.*, 99 A.D.3d 517, 520–21 (1st Dep't 2012) (quotation marks omitted); *Spinelli v. NFL*, 2016 WL 3926446, at *3–4 (S.D.N.Y. July 15, 2016) ("[t]ake it or leave it tactics (and a general refusal to negotiate) are permitted when the party in an inferior bargaining position can simply contract with a suitable replacement," but New York courts are sensitive where contracts involve "the primary basis of [people's] livelihoods"), *abrogated on other grounds by* 2016 WL 7441696 (S.D.N.Y. Dec. 23, 2016). This case is about hotel rooms. Plaintiffs were always free to book their stays elsewhere if they did not like the SPG Program Terms.

16

Plaintiffs next criticize Marriott's right to change the SPG Program Terms unilaterally. Plaintiffs continue to rely on employment and housing cases involving egregious tactics, which, again, are distinguishable. *See* Appellee Br. 30 (citing *OConner v. Agilant Sols., Inc.*, 444 F.Supp.3d 593 (S.D.N.Y. 2020) (employment contract involving deceptive and coercive tactics), and *McCormick v. Resurrection Homes*, 956 N.Y.S.2d 844 (N.Y. Civ. Ct. 2012) (housing contract waiving plaintiff's right to due process before eviction)). The only other case plaintiffs offer here applied Delaware law to find an arbitration clause unenforceable where defendant credit-card company added the term *after* credit-card holders had already sued them. *See* Appellee Br. 30 (citing *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237 (S.D.N.Y. 2005)). No such gamesmanship happened here.

ii.     Without procedural unconscionability, plaintiffs' substantive unconscionability arguments are irrelevant. In any event, they fail.

Plaintiffs argue that because the SPG Program Terms contain a class-action waiver but do not *also* contain an arbitration clause, the class-action waiver is substantively unconscionable. That is perverse. It "makes little sense that an arbitration agreement could take the more drastic step of entirely waiving a federal court forum, including the right to proceed

17

collectively, but a[nother] … contract could not waive the right to proceed collectively in court while preserving the right to bring suit on an individual claim." *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F.Supp.2d 682, 692 (S.D. Tex. 2013). No surprise that courts routinely approve class waivers independent of arbitration clauses, including under New York law. *See, e.g.*, *U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *3–4 (S.D.N.Y. June 25, 2015) (applying New York law, finding no reason "that class action waivers contained in a provision also containing an arbitration agreement should be treated as more sacrosanct than waivers in context of a contract without an arbitration agreement," and holding "it is clear that the class action waiver … is enforceable here"); *Palmer v. Convergys Corp.*, 2012 WL 425256, at *3 (M.D. Ga. Feb. 9, 2012) ("Class action waivers, like many other contractual terms, are proper subjects for contractual bargaining …. [T]hese waivers are not limited to the context of arbitration[.]"); *Lindsay v. Carnival Corp.*, 2021 WL 2682566, at *3–4 (W.D. Wash. June 30, 2021) (enforcing class waiver independent of arbitration clause and rejecting the idea that Rule 23 "creates a categorical rule entitling a plaintiff to pursue a class action" in federal court).

18

Plaintiffs offer no case—state or federal—holding otherwise. Instead, they cite a district court decision applying New York law to *enforce* a class-action waiver in a contract lacking an arbitration clause, *U1it4Less, Inc.*, 2015 WL 3916247; a case holding an arbitration clause unenforceable because New York law promised access to small claims court quickly and cheaply, *Licitra v. Gateway, Inc.*, 189 Misc. 2d 721, 727–28 (N.Y. Civ. Ct. 2001); and a case about forum selection, *Scarcella v. America Online, Inc.*, 11 Misc. 3d 19, 20 (N.Y. Sup. Ct. 2005). None supports plaintiffs' novel proposal that all class waivers unaccompanied by arbitration clauses are unconscionable. Plaintiffs received substantial benefits from participating in the SPG Program. The class waiver plaintiffs signed in exchange should be enforced.

## C.    The Class-Action Waiver Covers Plaintiffs' Class Claims.

In a final effort to avoid wholesale reversal, plaintiffs argue that their promise not to bring class claims applies only to their contract claims. The contract they signed forecloses this argument.

Plaintiffs begin by asserting that the SPG Program Terms govern only the operation of the SPG Program. Appellee Br. 34. That does not help plaintiffs because, under their own overpayment theory, plaintiffs' claims involve the price paid for bookings made via the SPG Program. In any event,

19

the SPG Program Terms "constitute the entire agreement between Starwood and SPG Members," "supersed[ing] any prior understandings or agreements." JA727 § 13.23. The contract expressly controls Members' legal relationship to "Starwood … (a subsidiary of Marriott International, Inc.) and their affiliates." JA708. It references "marriott.com" and makes clear that, by signing, an "SPG Member agrees that he/she has … read [and] understood" the "Website Terms of Use which are incorporated by reference herein" and has "provided consent for Starwood, the SPG Participating Hotels, the SPG Partner Hotels and their … agents to process data that is personal to him/her, and to disclose such data to third parties, in accordance with Starwood's Privacy Statement." JA708.

The class-action waiver also sweeps wide to cover "[a]ny disputes arising out of or related to the SPG Program or these SPG Program Terms." JA727 § 13.21. This "arising out of or related to" language is "broad," and "embrace[s] every dispute between the parties having a significant relationship to the contract regardless of the label attached" to the claims, be it contract or tort. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (rejecting reasoning that tort claims did not "arise out of or relate to" the contract); *see Roman v. Spirit*

20

*Airlines, Inc.*, 2021 WL 4317318, at *1–2 (11th Cir. Sept. 23, 2021); *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).

The SPG Program Terms encompass plaintiffs' relationship to Marriott, and the class waiver covers all related disputes—contract, tort, and consumer protection. The waiver thus bars all plaintiffs' class claims and should be enforced to defeat certification. Plaintiffs have essentially conceded that the district court erred in deferring ruling on the class waiver, and this Court should correct that mistake by reversing.

## II. Plaintiffs' Classes Fail Rule 23's Ascertainability Requirement.

### A. *EQT* And Administrative Feasibility Are The Law In This Circuit.

Plaintiffs begin their ascertainability argument by asking this Court to reject its decision in *EQT Productions Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014), and to dispense with administrative feasibility altogether. They point to out-of-Circuit cases, intimating that decisions from the Third or Eleventh Circuit should control. They do not.

Far from repudiating the concept of administrative feasibility, this Court has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *Id.* at 358. That decision controls here. *United States v. Seigler*, 990 F.3d 331,

336 n.6 (4th Cir. 2021) ("a 'panel of this court is bound by prior precedent from other panels'").

### B. Plaintiffs Cannot Show An Administratively Feasible Method To Identify Class Members.

*EQT* requires plaintiffs to provide an "administratively feasible" method for determining membership "without extensive and individualized fact finding or 'mini-trials.'" *EQT*, 764 F.3d at 358; *see Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (plaintiffs "must prove by a preponderance of the evidence that the class is ascertainable"). Plaintiffs have not met their burden.

To start, plaintiffs wrongly assert that Starwood's database "alone" establishes ascertainability. Appellee Br. 38–40. They concede that Starwood's reservation database does not actually identify class members because it does not show which guests were later reimbursed for their stays. But, plaintiffs insist, it is enough for ascertainability that the database provides a "practical starting point" for identifying "potential" class members. Appellee Br. 39–40. This misunderstands ascertainability. Plaintiffs must identify not just the starting point, but the end point: a method of separating potential from actual class members. *EQT*, 764 F.3d at 358. Plaintiffs have no such method.

Plaintiffs next say they have met their burden because *EQT* is distinguishable. If anything, the class members in *EQT* were *more* ascertainable because—unlike here—available records could identify a portion of the class members. *EQT*, 764 F.3d at 359 ("some class members will be easy to identify" by "cross-referencing the ownership schedules the defendants themselves prepared"). Even then, ascertainability was still found lacking because ownership of some parcels may have later changed hands, altering the class membership as to people who could not be readily identified. *Id.* at 359–60. The same logic applies here to doom ascertainability. Many guests were reimbursed for their stays so suffered no injury. As a result of money changing hands, plaintiffs have no method of identifying who belongs in or out of their classes.

Plaintiffs caricature the problems with using bank and credit card records. *See* Appellee Br. 41–44. Marriott's position is not that a single record or database must settle class membership once and for all. Of course, multiple records can be used. But plaintiffs' proposal—bank and credit card statements—does not settle class membership because these records do not prove the absence of reimbursement. Proving that negative requires an assessment of all payment and deposit methods used by a guest. Those

23

records are not before the district court, but in the possession of millions of putative class members (and their past or present employers, family members, or other potential payors). The court would need all of those records just to begin sorting out class membership. *See* Marriott Appellant Br. 35–37. And the infeasibility would not end there. Even if the court could confirm that a putative class member was not reimbursed for at least *one* stay—so should be in the class—the court would need to determine the extent to which that class member was reimbursed for *other* stays, an individualized factual inquiry that would predominate over class issues. *See id.* at 57.

Plaintiffs assert that self-identification can fix this problem. But the cases they cite support only a narrow role for affidavits to verify evidence that can easily be gleaned from other sources. *See In re Sonic Corp.*, 2021 WL 6694843, at *2 (6th Cir. Aug. 24, 2021) (allowing self-identification only because "there are records verifying that information"); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 692 (N.D. Ga. 2016) (same where "class members can obtain objective records with relative ease that would confirm their membership in the class"). This case is not analogous

24

because plaintiffs identify *no* records that can easily confirm a lack of reimbursement.

True, the Third Circuit has left open that affidavits might theoretically narrow an overinclusive database, but that court has never actually approved affidavits for that purpose. *See City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 442 (3d Cir. 2017). The Third Circuit was also careful to caveat that "[t]he amount of over-inclusiveness, if any, of the proposed records is a critical consideration." *Id.* "[A] high degree of over-inclusiveness could prevent certification." *Id.* at 442 n.4. ███████

███████████ Dkt. 885, Ex. 40–54. This over-inclusiveness makes an affidavit-based narrowing procedure infeasible.

This Court should not pioneer a new use for affidavits for this case, especially given the size of the classes, the time period covered by the claims, and the record compiled by the district court showing no way to prove a lack of reimbursement with records.

### C.     Class Members Must Be Identified At Trial.

The ascertainability problem here is particularly acute because class membership must be established at *trial*.

Working with plaintiffs' overpayment theory, the district court limited classes to guests who paid for stays and were not later reimbursed—that is, guests who can demonstrate injury-in-fact. In *TransUnion LLC v. Ramirez*, the Supreme Court held that every class member's standing must "be supported adequately by the *evidence adduced at trial*." 141 S. Ct. 2190, 2208 (2021) (emphasis added) (quotation marks omitted). Here, class membership turns on an individualized standing inquiry; thus, both must be determined at trial.

To be sure, "plaintiffs need not be able to identify every class member at the time of certification." *EQT*, 764 F.3d at 358. Marriott's point is not that class identification must happen *now* but that, under the district court's class definitions, it cannot happen after trial (by affidavit or other records) as plaintiffs and the district court envision. And that means plaintiffs have not met their burden to establish ascertainability.[5]

Despite not having cross-appealed, plaintiffs suggest that this Court could fix their ascertainability problem by modifying the class definitions to include every customer whose data was subject to the incident, whether or

---

[5] Moreover, affidavits or other customer records would be inadmissible hearsay. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018). And having all potential class members show up to testify is infeasible.

not they were reimbursed. Plaintiffs' attempt to relitigate their failed class definitions should be rejected. The district court rightly concluded that the presence of uninjured members is a sign that everyone in the class has not "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quotation marks omitted); *see Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619 (D.C. Cir. 2019) (class cannot be certified if it contains more than a *de minimis* number of uninjured members); *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018) (similar). Plaintiffs cannot avoid reversal by rewriting the district court's certification order.

## III.  Plaintiffs' Damages Model Does Not Satisfy *Comcast*.

The district court also erred in relying on Plaintiffs' damages model, which fails *Comcast*.

### A.  *Comcast* Requires This Court To Examine The Validity Of Plaintiffs' Damages Model.

Plaintiffs first assert that this Court cannot evaluate their damages model on a 23(f) appeal, insisting this inquiry should be confined to a later appeal of the district court's *Daubert* ruling.

It is the plaintiffs who have confused *Daubert* with *Comcast*. Independent of any *Daubert* gatekeeping obligation, *Comcast* requires appellate courts to ensure that plaintiffs have carried their burden to "affirmatively demonstrate" through "evidentiary proof" that "damages are capable of measurement on a classwide basis" using methodology that is "a just and reasonable inference" rather than "speculative." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–36 (2013) (quotation marks omitted).

Indeed, plaintiffs in *Comcast* also argued that challenges to their damages model should be confined to a *Daubert* motion, which defendants in that case had waived. *Id.* at 32 n.4. The Supreme Court disagreed, explaining that regardless of whether expert testimony was admissible under *Daubert*, plaintiffs "had failed to establish that damages could be measured on a classwide basis" for Rule 23 purposes. *Id.* To be sure, every expert damages model needs to satisfy *Daubert*, but Rule 23 imposes a distinct requirement: Plaintiffs cannot obtain certification without establishing that their model is adequate to calculate class damages. They failed to do so here.

### B.   Plaintiffs' Damages Model Relies On An Untested Theory Of Co-Movement.

Plaintiffs have little to say on the merits. They do not seriously dispute what co-movement implies: that a hotel's rate moves in sync with its

competitors under all circumstances. ███████████████████

███████████ Appellee Br. 69, ███████████

████████████████████████████████████████

Nor do plaintiffs seriously dispute that Dr. Prince's model relies on co-movement. Their rhetoric of "gross misstate[ment]" aside, Appellee Br. 68, plaintiffs pointedly do not deny that Dr. Prince's model is unworkable if co-movement is an invalid assumption. As even the district court acknowledged, "Dr. Prince justified" his damages model by "assum[ing]" that "prices would co-move at the same rate throughout the data breach period, allowing him to apply the same percentage of overcharge for each stay of a class member." JA521.

All that leaves plaintiffs the task of proving that Dr. Prince justified his co-movement assumption. He did not. Dr. Prince has conceded his sole authority is the Cho paper, which plaintiffs describe as "a sophisticated study of the hotel industry showing that hotel prices reflect co-movement," ███████████████████████████ Appellee Br. 64, 66 (quoting JA517 (district court order)).

It is not the caliber of a co-author's medal that makes the paper inadequate for Dr. Prince's purposes, but its scope and its findings. The Cho paper did not study the "hotel industry"; it studied seven hotels in a single small market over a single year. The Cho paper did not and could not justify an assumption that *all* hotel prices for all brands in all markets ████████ ████████████ Appellee Br. 64. If anything, the paper contradicts Dr. Prince's use of co-movement. It noted that the limited co-movement it observed occurred when a hotel did *not* follow the recommendation of its pricing software. Sungjin Cho *et al.*, *Optimal Dynamic Hotel Pricing* 6–7 (2018). ██████████████████████████████████████████████████ ██████████████████████████████████████████ Appellee Br. 66.

Plaintiffs argue that ██████████████████████████████ ████████████████████████████████████████████████████ Appellee Br. 67. That is a non-sequitur. Dr. Prince's model is not an ██████████████████ Rather, the model purports to calculate the overpayment incurred by millions of class members, and it concededly cannot do so without an impracticable number of runs *unless* co-movement is a valid assumption—an assumption Dr. Prince never verified ████████ ██████████████████████████████████████████████████

30

████████████████ Whether other economists rerun analyses in other contexts is irrelevant. Dr. Prince's untested assumption that prices will rise and fall together across such a wide range of time and place is just the type of "speculative" methodology that *Comcast* forbids. 569 U.S. at 35–36. Indeed, the very fact that Dr. Prince admits, Appellee Br. 66, he does not know how many times he would need to run his model itself establishes that plaintiffs have not carried their *Comcast* burden to establish that their model works.

Dr. Prince's co-movement assumption is not just speculative, but disproven. ████████████████████████████████████████████████ ███████████████████████████████████████ Appellee Br. 70 (quoting JA1776 (Dr. Prince Dep.)). But that is exactly what Dr. Tucker disproved. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



Plaintiffs have, therefore, failed to "affirmatively demonstrate" that a model for calculating damages on a classwide basis exists. *Comcast*, 569 U.S. at 33. For this reason too, the class certification order should be reversed.[6]

---

[6] Marriott joins Accenture's reply brief, including regarding issue classes.

32

## CONCLUSION

This Court should reverse the district court's certification order.

Dated: December 16, 2022                     Respectfully Submitted,

                                             /s/ Matthew S. Hellman
Daniel R. Warren                             Lindsay C. Harrison
Lisa M. Ghannoum                             Matthew S. Hellman
Kyle T. Cutts                                Michelle S. Kallen
Dante A. Marinucci                           Elizabeth B. Deutsch
BAKER & HOSTETLER LLP                         Mary E. Marshall
127 Public Square                            JENNER & BLOCK LLP
Suite 200                                    1099 New York Avenue, NW
Cleveland, OH 44114                          Suite 900
Tel: 216-621-0200                            Washington, DC 20001
                                             Tel: 202-639-6000
Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
Tel: 202-861-1530

*Counsel for Defendant-Petitioner Marriott International, Inc.*

33

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), Petitioner Marriott International, Inc., by and through their counsel of record, hereby certify that this brief complies with the type-volume limitations of Fed. Rule App. P. 5(c) and 32(c)(2) because this brief contains 6,500 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century Expanded LT Standard 14-point font.

Dated: December 16, 2022            /s/ Matthew S. Hellman

1

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, I electronically filed the foregoing brief with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

I also certify that on December 16, 2022, I caused a copy of the foregoing Reply to be delivered by e-mail upon the following:

Amy E. Keller
DICELLO LEVITT
GUTZLER LLC
Ten North Dearborn Street
6th Floor
Chicago, IL 60602
akeller@dicellolevitt.com

James J. Pizzirusso
HAUSFELD LLP
888 15th Street NW, Ste 300
Washington, DC 20006
jpizzirusso@hausfeld.com

Megan Jones
HAUSFELD LLP
600 Montgomery Street, Ste 3200
San Francisco, CA 94111
mjones@hausfeld.com

Andrew N. Friedman
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Avenue, NW
Ste 500

MaryBeth V. Gibson
THE FINLEY FIRM, P.C.
3535 Piedmont Road, Bldg. 14,
Ste 230
Atlanta, GA 30305
mgibson@thefinleyfirm.com

Ariana J. Tadler
TADLER LAW LLP
One Penn Plaza, 36th Floor
New York, NY 10119
atadler@tadlerlaw.com

Jason Lichtman
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
jlichtman@lchb.com

Daniel Robinson
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, CA 92660
drobinson@robinsonfirm.com

2

Washington, DC 20005
afriedman@cohenmilstein.com

Norman E. Siegel
STUEVE SIEGEL
HANSON LLP
460 Nichols Road, Ste 200
Kansas City, MO 64112
siegel@stuevesiegel.com

Timothy Maloney
Veronica Nannis
JOSEPH GREENWALK &
LAAKE, P.A.
6404 Ivy Lane, Ste 400
Greenbelt, MD 20770
tmaloney@jgllaw.com
vnannis@gjllaw.com

Gary F. Lynch
CARLSON LYNCH LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
glynch@carlsonlynch.com

James Ulwick
KRAMON & GRAHAM PA
1 South Street, Ste 2600
Baltimore, MD 21202
julwick@kg-law.com

Craig S. Primis, P.C.
Erin N. Murphy
Devin S. Anderson
Emily M. Lon
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
cprimis@kirkland.com

Dated: December 16, 2022          /s/ Matthew S. Hellman

3